IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER HALL, ) | |
| Plaintiff, ) | |
| v. ) | No: 12-C-4063 |
| ) | |
| BOARD OF EDUCATION OF THE ) | Judge Guzman |
| CITY OF CHICAGO, MARCEY SORENSEN, ) | |
| and CARMEN DIAZ, ) | |
| Defendants. ) | JURY DEMANDED |
| ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COUNTS V AND VII FOR FAILURE TO STATE A CLAIM**

NOW COMES the Plaintiff, CHRISTOPHER HALL, by and through his attorneys Mary Grieb and the Shiller Preyar Law Offices, with the instant response to Defendants' Motion to Dismiss Counts V and VII, and in support, states as follows:

**INTRODUCTION**

Plaintiff, Christopher Hall, filed a seven-count complaint against Marcey Sorensen, Carmen Diaz, and the Chicago Board of Education, arising out of his termination as the Head Baseball Coach at Clemente High School on October 4, 2011. (Dkt. 1). Plaintiff alleges that he was terminated because he is African-American, in violation of the protections of the United States Constitution and federal law, and replaced by a less qualified and less experienced Latino baseball coach. Defendants have filed a motion to dismiss two of Plaintiff's claims: Count V, a due process claim, and Count VII, an intentional infliction of emotional distress claim. For the reasons stated herein, Plaintiff has alleged sufficient facts to do all that is required at this stage in the litigation: give Defendants sufficient notice of his claims by pleading facts which make out a plausible claim for relief. Plaintiff thus respectfully requests that this Court deny Defendants' partial motion to dismiss in its entirety.

1

## STANDARD OF REVIEW

The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test the sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996). In determining whether to grant a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded allegations in the complaint as true, and draws all reasonable inferences in the light most favorable to the plaintiff. *Iqbal,* 556 U.S. 662, ____, 129 S. Ct. 1937, 1949; *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). The federal notice pleading standard requires only that "a complaint state the plaintiff's legal claim, ... together with some indication ... of time and place." Fed. R. Civ. P. 8(a)(2); *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). A court will grant a motion to dismiss only if the plaintiff cannot prevail under any set of facts that could be proven consistent with the allegations. *Forseth v. Village of Sussez*, 199 F.3d 363, 368 (7th Cir. 2000).

Recently, the Seventh Circuit has summarized the requirements of *Twombly* and *Iqbal v. Aschroft*, 129 S.Ct. 1937 (2009), condensing them into three elements: (1) a plaintiff must give notice of his claims to the defendants; (2) the court must accept the factual allegations in plaintiff's complaint as true unless they are so vague or improbable that they do not give the defendant notice of the claims; and (3) conclusory allegations and bare recitations of the elements of a claim are unacceptable. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Plaintiffs still do not need to plead detailed factual allegations. *Iqbal*, 129 S.Ct. at 1949.

## ANALYSIS

**I.     Plaintiff Has Sufficiently Pleaded Facts Which Establish a Due Process Violation**

Plaintiff has sufficiently put Defendants on notice of facts which establish a due process violation. Defendants posit the semantic argument that Plaintiff does not have a protectable property interest in his coaching position so he therefore cannot establish a due process violation.

2

Such an argument misconstrues the well settled case law and development of the concept of a person's liberty interest under constitutional jurisprudence. Contrary to Defendants' arguments, a protectable liberty interest is determined as a matter of constitutional law rather than by reference to state law. In *Board of Regents of State Colleges v. Roth*, the Supreme Court explained that "liberty denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life…and generally enjoy those privileges long recognized as essential to the orderly pursuit of happiness by free men." 408 U.S. 564, 572 (1972). The government violates an employee's occupational liberty interest when, in the course of any adverse employment action, the employer stigmatizes the employee by making public comments that impugn "the individual's good name, reputation, honor, or integrity or impose a "stigma or other disability on the individual which forecloses other opportunities." *Id*. at 573.

Here, Plaintiff has alleged sufficient facts to establish that his occupational liberty interest was violated by Defendants' conduct.[1] The decision in *Bryant v. Gardner*, 545 F.Supp.2d 791 (March 7, 2008), provides a proper framework to analyze Hall's claim. In *Bryant,* the boys' basketball coach at Marshall High School alleged that he was unlawfully terminated from that position (while remaining employed as the gym teacher at the school). There, the court held that an individual can state an occupational liberty claim even if the adverse employment action involves a job in which the individual has no property interest. *Id*. at 798. (citing *Klug v. Chicago School Reform Bd. of Trustees,* 197 F.3d 853, 859 (7th Cir.1999); *Guy v. State of Illinois,* 958 F.Supp. 1300, 1311 (N.D.Ill.1997)). Significantly, the court noted that the issue for purposes of an occupational liberty claim is not whether the defendants have fired plaintiff from

---

[1] There can be little question that Plaintiff has sufficiently alleged that he was denied notice and a hearing before Defendants terminated him from his coaching position. Indeed, his request to see the complaints that Defendants Sorensen and Diaz alleged were the reason for his termination fell on deaf ears. Complaint, ¶ 18.

3

a particular position in which he possessed a property interest, but whether a discharge or other adverse employment action was carried out in such a manner that it will significantly impinge on the plaintiff's ability to pursue his chosen occupation. *Id*. at 799. (citing *Bordelon v. Chi. Sch. Reform Bd. of Trustees,* 233 F.3d 524, 531 (7th Cir.2000); *and see*, *Wroblewski v. City of Washburn*, 965 F.2d 452, 456 (7th Cir. 1992). The court has also recognized an occupational liberty interest in a high school coaching position, notwithstanding the coach's ability to remain employed by his school, that is protected by the Due Process Clause. *See Bryant v. Gardner*, 545 F. Supp. 2d 791,800 (N.D. Ill. 2008). In denying the Board of Education's motion to dismiss, Judge Castillo distinguished plaintiff's procedural due process claims from those in the Seventh Circuit *Smith* case, relied upon by Defendants. The same reasoning applies here.

In this case, Plaintiff has properly put Defendants on notice of the deprivation of his occupational liberty interest. To do so, Plaintiff must allege that: (1) the employer made stigmatizing comments, (2) the comments were publicly disclosed and (3) the plaintiff suffered a tangible loss of other employment opportunities as a result. *Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001). Plaintiff alleged that his employers made stigmatizing comments in that they asked several parents of players on the Clemente baseball team to write complaints about Plaintiff's performance so that they could cover up the real reason for terminating Plaintiff and hiring a Latino replacement. Complaint, ¶ 16. Such an allegation reasonably satisfies the first and second elements of the *Townsend* test. With respect to the third element, Plaintiff also alleged that his current (at the time) employment as a Student Advocate at Clemente High School was adversely affected and that his reputation as a baseball coach was damaged due to his firing and the comments made to parents of his team members. Complaint, ¶ 21 and 22. It can reasonably be inferred that the damage to Plaintiff's reputation as a baseball coach due to his firing by Defendants also caused Plaintiff difficulty in gaining employment as a baseball coach at

other Chicago area high schools. At the very least, Plaintiff should be allowed to conduct discovery into the effects of his firing on his employment opportunities as a baseball coach.

Finally, Defendants' reliance on *Smith* is misplaced. In *Smith*, the Seventh Circuit did not conclude that the plaintiffs lacked a protectable property interest in their coaching career; instead, the court found that the statements made by plaintiffs' employers regarding plaintiffs' termination were not sufficiently stigmatizing to trigger the protection of the due process clause. *Id*. at 265. In contrast, Plaintiff Hall has alleged here that Defendants Sorensen and Diaz asked several parents of students on the baseball team to write complaints about his alleged poor performance in order to cover up their discriminatory reason for firing Plaintiff. Complaint, ¶ 15. According to Plaintiff, however, his performance as baseball coach had been excellent, resulting in improved athletic performance for the team and increased academic standards of the student-athletes under his leadership. Complaint, ¶ 20. Plaintiff further alleged that his termination as a baseball coach at Clemente has adversely affected his employment (at the time) as a Student Advocate at Clemente High School by damaging his professional relationships with colleagues and mentoring relationships with students. Complaint, ¶ 21. Finally, Plaintiff alleged that his reputation was damaged due to Defendants' unlawful actions. Complaint, ¶ 22.

In sum, if Hall can prove that he was stigmatized, that he could not find other work as a coach in the Chicago area as a result of that stigma, and that it was not feasible for him to work outside the school district, he will be able to show that his "good name, reputation, honor, or integrity ... was called into question it a manner that [made] it virtually impossible for Hall to find new employment in his chosen field." *RJB Properties, Inc.*, 468 F.3d at 1011. Accordingly, Defendants' motion to dismiss Count V must be denied.

**II.     Defendants Are Not Entitled to Qualified Immunity.**

The allegations in Plaintiff's Complaint sufficiently state violations of his constitutional rights, and therefore Diaz and Sorensen are not entitled to qualified immunity. Qualified immunity does not protect those who act unreasonably or who knowingly violate the law. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). A government official is entitled to qualified immunity only when: (1) the facts alleged do not set forth a violation of a constitutional right and (2) the right was not clearly established at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Sornberger v. City of Knoxville*, 434 F. 3d 1006 (7th Cir. 2006).

Here, as set forth *supra*, a protectable interest in one's occupational liberty, or "the ability to follow a trade, profession, or other calling" has been clearly established since at least 1972. *See, e.g. Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992), *see also Roth*, 408 U.S. at 573. A protectable liberty interest in a coaching position, even when there is only an implied contract of employment, has been clearly established since at least 1983. See *Vail v. Board of Educ. Of Paris Union School Dist. No. 95*, 706 F.2d 1435 (7th Cir. 1983) (coach and athletic director plaintiff was deprived of his legitimate expectation of continued employment when school board voted not to renew his contract and such deprivation was a violation of due process actionable under the Civil Rights Act, 42 U.S.C. Section 1983).

Defendants' argument that, despite their diligent search of the case law, "it was not clearly established in October 2011 that a person in an extracurricular, non-tenured coaching position in the Chicago Public Schools was entitled to due process before termination from that position" is unavailing. At the very latest, Defendants were on notice that such a position was entitled to due process in 2008, when Judge Castillo issued his ruling in the *Bryant* case. The facts in Bryant are strikingly similar to the ones in the case at bar (non-tenured high school basketball coach who was terminated from his coaching position but remained as a gym teacher

6

at the school) and the plaintiff there made allegations against the same Defendant as in the instant case – the Chicago Board of Education. In *Bryant*, the court held that "Plaintiff has pled enough to state a plausible claim for deprivation of his occupational liberty, which is all that is required under *Bell Atlantic*." *Bryant*, 545 F. Supp.2d at 802.

As to the first prong of qualified immunity, Defendants do not argue that Plaintiff actually received due process before his termination or that he failed to allege that he did not receive due process. Indeed, according to his Complaint, Plaintiff was terminated without seeing any of the alleged parent complaints against him, without a hearing before his termination, and without an opportunity to respond. Complaint, ¶ 18, 47, and 48. Thus, Defendants are not entitled to qualified immunity at this stage of the litigation. For these reasons, Defendants' motion to dismiss on qualified immunity grounds should also be denied.

### III. Plaintiff Has Sufficiently Alleged Facts Which Establish An Intentional Infliction of Emotional Distress Claim

Finally, Plaintiff Hall has also alleged sufficiently egregious facts concerning Defendants Sorensen and Diaz to establish a plausible claim for intentional infliction of emotional distress. To state a cause of action for intentional infliction of emotional distress, Plaintiff must allege that "(1) the conduct was truly extreme and outrageous; (2) the actor either intended that his conduct inflict severe emotional distress, or knew that there was a high probability that the conduct would cause severe emotional distress; and (3) the conduct, in fact, caused severe emotional distress." *Reilly ex. Rel. Reilly v. Wyeth*, 377 Ill.App.3d 20, 315 Ill. Dec. 428, 876 N.E.2d 740, 755 (Ill.App.Ct. 2007).

In this case, Plaintiff has alleged that he was unlawfully terminated from a position he had held for three years (and volunteered for approximately ten years before that) because he was African-American, that his principal and athletic director (Sorensen and Diaz, respectively)

7

contacted the parents of students on his team in order to drum up bogus complaints against him to fire him, that a less experienced Latino individual was hired to replace him, that his reputation (amongst his colleagues and former team members) was damaged, that he was terminated based on alleged complaints of misconduct and/or poor performance that he was never allowed to see, and that seven days after he met with officials of the Defendant Board of Education to complain about the discrimination he was facing, he was terminated.

Defense counsel's opinion that "the extreme and outrageous conduct Plaintiff alleges to support his claim amounts to nothing more than the factual circumstances underlying his discrimination claim" (Dkt. 21, p. 12) does not provide a persuasive reason to dismiss Plaintiff's IIED claim, especially at such an early stage of litigation before any discovery has taken place. Furthermore, employers are a prime example of the type of individuals who in exercising their authority can become liable for extreme abuses of their positions. The outrageous nature of a defendant's conduct may depend upon the degree of authority which the defendant exercises over the plaintiff:

> [t]he more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment. Threats, for example, are much more likely to be a part of outrageous conduct when made by someone with the ability to carry them out [than] when made by someone in a comparatively weak position.

*McGrath v. Fahey,* 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (1988). When the abuse of a position of authority is at issue, a court should also consider whether the defendant reasonably believed that his or her objective was legitimate. *Doe v. Calumet City,* 204 Ill.Dec. at 283, 641 N.E.2d at 507. Here, Diaz's and Sorensen's conduct was outrageous because 1) as plaintiff's supervisors, they had significant power over plaintiff's continued employment at Clemente High School, continued employment as a baseball coach, and plaintiff's reputation amongst the

8

parents of students he coached and his professional colleagues and 2) their conduct simply had no legitimate objective, *i.e.* it was intentional discrimination against Plaintiff because of his race.

Finally, whether Defendants' conduct in this case is truly extreme and outrageous presents too many possible questions of fact to be decided at this early stage of the litigation. At the motion to dismiss stage, it is simply too soon to plead every instance of Defendants' conduct without the benefit of discovery. Indeed, all that is required at this stage is that Defendants are on notice as to what Plaintiff is charging and that, if he can prove such allegations, he has a plausible claim for relief. Further, drawing all reasonable inferences in favor of Plaintiff, it is certainly possible that Defendants Sorensen and Diaz engaged in a witch hunt to find pretextual reasons to terminate Plaintiff and/or damage his reputation. As Plaintiff requested the alleged parental complaints against him, Plaintiff does not know if they themselves contain defamatory statements or if Sorensen and Diaz made injurious statements regarding Plaintiff to parents of students he interacts with or potential employers. Accordingly, Defendants' motion to dismiss Plaintiff's intentional infliction of emotional distress claim should also be denied.

## **CONCLUSION**

WHEREFORE, Plaintiff, CHRISTOPHER HALL, requests that this Court deny Defendants Motion to Dismiss Counts V and VII in its entirety.


Respectfully Submitted,

s/ Mary J. Grieb
Mary J. Grieb

Shiller Preyar Law Offices
1100 W. Cermak, Suite B401
Chicago, IL 60608
(312) 226-4590

**CERTIFICATE OF SERVICE**

I, Mary J. Grieb, hereby certify that a copy of the foregoing was served upon all opposing counsel via the EM/ECF email system.


s/ Mary J. Grieb
Mary J. Grieb
Shiller Preyar Law Offices
1100 W. Cermak, Suite B401
Chicago, IL 60608
(312) 226-4590